1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9

10  MICHAEL JAMES,                              )   1:07-cv-01110-JMD-HC
                                                )
11              Petitioner,                     )   ORDER DENYING PETITION FOR WRIT
                                                )   OF HABEAS CORPUS WITH PREJUDICE
12       v.                                     )
                                                )   ORDER DIRECTING CLERK TO ENTER
13  DARRAL ADAMS,                               )   JUDGMENT
                                                )
14              Respondent.                     )   ORDER DECLINING TO ISSUE A
                                                )   CERTIFICATE OF APPEALABILITY
15

16

17          Petitioner Michael James ("Petitioner") is a state prisoner proceeding with a petition for writ

    of habeas corpus pursuant to 28 U.S.C. § 2254.
18

                                          **Procedural History**
19

20          On May 2, 2002, a jury convicted Petitioner of conspiracy to commit murder and attempted

    premeditated murder.  *People v. James*, 2003 Cal. App. Unpub. LEXIS 10690*2 (Cal. Ct. App.
21

    2003).[1]   The sentencing court imposed a sentence of twenty-five years to life for the conspiracy
22

    conviction and imposed a sentence of fifteen years to life for the attempted murder charge.  *Id.* at 3.
23

    Petitioner's sentences on each count included an enhancement based on Petitioner's prior prison
24

    term pursuant to California Penal Code section 667.5(b).  *Id.*   The sentencing court stayed
25

26  [1] Respondent failed to file copies of either of the two California Court of Appeal's decisions affirming Petitioner's conviction
    as required by Rule 5 of the Rules Governing Section 2254 Cases.  Accordingly, the Court cites to the unpublished decisions
27  available on LexisNexis in this order.  Respondent also failed to file a copy of the California Superior Court's decision
    denying Petitioner's state habeas petition.  Fortunately, a copy of the Superior Court's order is contained within the text of
28  Petitioner's second amended petition.

1  Petitioner's sentence on the attempted murder conviction pursuant to California Penal Code section

2  654. *Id*. at 4.

3  Petitioner challenged his conviction in the California Court of Appeal. *See* id. The Court of

4  Appeal reversed Petitioner's conviction and remanded the case to the trial court for the limited

5  purposes of conducting a *Marsden*[2] hearing and correcting sentencing errors committed by the trial

6  court. *Id.* at 43.

7  On remand, the trial court conducted a *Marsden* hearing during which Petitioner was

8  afforded an opportunity to explain his reasons for requesting appointment of new counsel. *People v.*

9  *James*, 2005 Cal. Appl. Unpub. LEXIS 1129*3-4 (Cal. Ct. App. 2005). The trial court denied

10 Petitioner's motion to have counsel appointed to assist him at the *Marsden* hearing. *Id*. The trial

11 court denied Petitioner's *Marsden* motion after hearing Petitioner's testimony. *Id.* at 5.

12 Petitioner appealed his conviction once again to the California Court of Appeal. *See id.* In

13 his second appeal, Petitioner contended that the trial court erred in denying his motion to have

14 counsel appointed to assist him at the Marsden hearing. *Id*. The Court of Appeal affirmed

15 Petitioner's conviction. *Id*. at 11.

16 Petitioner filed two petitions for review with the California Supreme Court, each of which

17 were summarily denied. (Lod. Doc. 10); *People v. James*, 2005 Cal. LEXIS 4471 (Cal. 2005).

18 Petitioner filed a petition for writ of habeas corpus in the California Superior Court on April

19 5, 2006. (Doc. , First Amended Petition at 38-42). The Superior Court denied the petition on

20 August 4, 2006.

21 Petitioner filed the instant petition for writ of habeas corpus in the United States District

22 Court, Eastern District of California on July 20, 2007. (Doc. 1). Respondent filed an answer on

23 September 19, 2008. (Doc. 22). On June 25, 2009, Petitioner filed a second amended petition which

24 omitted unexhausted claims pursuant to an order of the Court entered on May 18, 2009. (Docs. 33,

25 35).

26 ///

27

28 [2] In *People v. Marsden*, 2 Cal. 3d 118 (Cal. 1970), the California Supreme Court held that trial courts must give defendants an opportunity to establish the incompetence of their counsel upon request.

1    Both Petitioner and Respondent have consented to Magistrate Jurisdiction pursuant to 28

2    U.S.C. § 636 (c)(1).  (Docs. 4, 21).

3                                        **Factual Background**

4    The Court adopts the California Court of Appeal's summation of the facts surrounding

5    Petitioner's crime and conviction:

An information filed in Kern Superior Court [*2]  on March 4, 2002, charged appellants Manuel Eugene Shotwell (Shotwell) and Michael Tavaris James (James) (collectively appellants), with conspiracy to commit murder (Pen. Code, §§ 182, subd. (a)(1), 187, subd. (a)) (count 1), and with attempted premeditated murder (§§ 664, 187, subd. (a)) (count 2). Fourteen overt acts were alleged in connection with count 1. By the time of trial, overt acts 1, 2, 12, 13 and 14 had been stricken or dismissed, and only overt acts 3 through 11 were presented to the jury. The information further alleged, as to both counts, that the crimes were committed with premeditation and deliberation (§§ 664, subd. (a), 189), that appellants had committed the crimes for the benefit of a street gang (§ 186.22, subd. (b)(1)), and that appellants had caused great bodily injury by personally discharging a firearm (§ 12022.53, subd. (d)). As to James, the information alleged a prior prison term enhancement (§ 667.5, subd. (b)).

On May 2, 2002, a jury sworn on April 30, 2002, convicted appellants of both counts and found true the allegation that the crimes were committed with premeditation and deliberation. The jury also [*3]  found true as to both appellants that a conspirator had committed an overt act in furtherance of the conspiracy charged in count 1 as alleged in the information. The jury further found the personal firearm use enhancement against Shotwell true, but found the street gang allegations against appellants not true. The following day, in a bifurcated court trial, the court found the prior prison term enhancement allegation against James true, granted the prosecutor's motion to strike the personal use of a firearm enhancement alleged against James, and denied James's Marsden 1 motion.

James was sentenced on May 29, 2002, to 25 years to life for his conviction in count 1, plus one year for the prior prison term enhancement, and 15 years to life for his conviction in count 2, plus one year for the prior prison term enhancement. The term in count 2 was stayed pursuant to Penal Code section 654.

Shotwell [*4]  was sentenced on June 11, 2002, in count 1 to 25 years to life, plus 25 years to life on the firearm enhancement, and in count 2 to 15 years to life, plus 25 years to life on the firearm enhancement. The term in count 2 was stayed pursuant to Penal Code section 654.

James and Shotwell appeal. Both James and Shotwell contend that: (1) the trial court failed to properly instruct the jury on the overt act requirement in instructions defining the offense of conspiracy to commit murder; (2) their attempted murder convictions must be dismissed because, as pleaded in this case, attempted murder was a lesser included offense of conspiracy to commit murder; (3) the trial court erred in instructing the jury pursuant to CALJIC No. 17.41.1; and (4) the trial court erred when it sentenced appellants to 15 years to life on count 2. James also contends that: (1) the trial court improperly denied his Marsden motion; and (2) the trial court erred when it imposed his single prior prison conviction enhancement on each count of conviction.

For the reasons discussed in this opinion, we find that any instructional error regarding the law of conspiracy was harmless, that reversal [*5] is not required because the court instructed the jury pursuant to CALJIC No. 17.41.1, and appellants were properly convicted of both attempted murder and conspiracy to commit murder. Respondent concedes the trial court erred in imposing the prior prison term enhancement on each count of James's conviction and in sentencing both James and Shotwell to 15 years to life on the attempted murder convictions. We agree, and also conclude the trial court erred in failing to allow James to fully state his reasons for requesting substitution of counsel.

**THE NOVEMBER 27, 2001, WELCH HOMICIDE**

Francisco King was a childhood friend of Shotwell and Tommy Welch. King also knew James because they went to high school together. On November 27, 2001, King, Welch, and Shotwell took Welch's white car to an address on Houser Street in Bakersfield for repairs. After dropping the car off, the three men went to King's house, also on Houser Street. King's girlfriend and daughter were at the house, but King did not recall if James was present. Shortly after arriving at King's house, Welch left. King then heard six or seven shots and "hit the ground." When he got up, he went outside with [*6] Shotwell and saw Welch lying in the street. King saw someone running down the alley, but could not identify the person. King went back into the house, got some blankets, and went back outside to help Welch. Shotwell was crying.

Just after 4:00 p.m. on November 27, 2001, Bakersfield Police Detective Dennis McBride and his partner were on patrol when they heard the call about the Welch shooting. They immediately went to the scene. McBride interviewed witnesses and came to believe that Donmac Roberts was the person who shot Welch. McBride also saw a car, which registration records showed was a 1986 Ford registered to Welch, parked in J. T. Grandson's front yard.

Several times on November 27, the police came to Christopher Davis's house and asked him about Donmac Roberts, who was a suspect in Welch's murder. At the time, Davis lived with his brother, William Watson, and his mother. Roberts, who Davis's grandmother had adopted and Davis considered to be his adopted brother, had lived at Davis's house until he got married in 2000. Davis called Roberts his "little brother." After that, Roberts only stayed there occasionally, in the den, when he had marital problems. Davis's mother's bedroom [*7] was at the back of the house, while the bedrooms of Davis and Watson were near the front door. In addition to the front door, the den had a sliding glass door that opened to the outside.

Davis testified he told police that on November 27, Roberts had been at his house with him and a friend, playing video games and listening to music, until about 4:00 p.m., when Roberts walked north on a nearby side street. Davis later found out that Roberts had been arrested that day.

**THE NOVEMBER 29, 2001, DAVIS SHOOTING**

At 8:15 a.m. on November 29, 2001, Davis was lying in bed when he heard someone knocking on his window, banging on the front door, and calling his first name. When Davis yelled, "Who is it?," someone said "it's Eddie L's." Davis knew someone with that nickname, so he looked out his window and saw James, who went by the nickname "Michael Do," and another person, whom he later realized was Shotwell. James was facing Davis's window and wearing a Cowboys jacket with the hood up, while Shotwell was knocking on the door and wearing all black with a coat.

Davis first met James a couple years before, when James came to Davis's house to get car parts from Roberts's car. Since [*8] that time, Davis saw James periodically on the street, but they never talked. Davis went to school with Shotwell's brother and knew Shotwell from playing basketball at the park. Davis last saw Shotwell in the summer of 2001. Davis did not have problems with either James or Shotwell before; he didn't really know James and knew Shotwell "quite a bit" from playing basketball and "knowing" Shotwell's brother. According to Davis, Shotwell and Roberts were friends.

Davis thought they might want to ask him about the Welch murder and his brother, so he told them to wait, and he went to the front door. When Davis opened the front door, no one was there. Davis walked outside, turned to his right, and walked to the end of the porch toward the side yard. When Davis got to the end of the porch he saw James and Shotwell. Davis thought they were talking to his brother Watson across the gate or fence. Appellants smiled, and said, "What's up, Chris?" He replied, "What's up?" Suddenly a mean look came across Shotwell's face; he raised a gun that he was holding at his side, aimed it at Davis's face, and started shooting. A bullet hit the right side of Davis's neck, and he went into a state of shock. [*9] As Shotwell continued shooting, Davis turned and went into the house "in a trance." Davis was shot about eight times, including in the right shoulder and the right side of his chest.

As Davis re-entered his house and closed the door, he saw a hand with a gun following him into the house. Davis continued to close the door, and the hand moved back out of the house. Davis shut and locked the door. Watson walked in from the den, calling 911. At trial, the tape of Watson's 911 call was played for the jury. When the police arrived, Davis talked to an officer and told him who shot him.

About 8:00 a.m. on November 29, Maria Flores returned to her house on the same street as Davis's after dropping her children off at school. About 15 minutes later she heard five shots and ran to her window. She saw two people wearing black jackets run and get into a large, older white car parked in the alley in front of her house. The car may have had a tan top, and one person may have gotten into the front seat while the other person got into the back seat. The people were too far away for her to tell their gender or race. The car left "real fast." Later, Flores told police what she had seen.

Davis was [*10] taken to Kern Medical Center, where he told Bakersfield Police Officer Damon Youngblood that Shotwell was the person who shot him. The audiotape of the interview was played for the jury, on which Davis states that Shotwell was the person who shot him and that "Michael Do" was also there.

Ray Chung, a trauma surgeon at Kern Medical Center, treated Davis on November 29, 2001. Dr. Chung noted Davis had "multiple gunshot wounds" to his body, and they counted "seven wounds to his chest," as well as neck wounds. Davis also had pneumothorax, a potentially life-threatening condition caused when a bullet punctures the lung, which required insertion of a tube into Davis's lung. "After adequate resuscitation," they found that Davis had a lot of fluid in his abdomen, and medical personnel rushed Davis into surgery. During surgery, Dr. Chung repaired two holes in Davis's diaphragm, as well as injuries to his liver and spleen. Any one of the injuries was potentially life-threatening, but Dr. Chung described the pneumothorax as the most dangerous.

**THE INVESTIGATION INTO THE DAVIS SHOOTING**

During Davis's three-week hospital stay, Detectives Charmley and McBride came and talked to him. [*11] The detectives showed him pictures of James and Shotwell, and

he identified them as the men who had shot him. At trial, Davis admitted telling the detectives that he initially did not see the second person when he first looked out the window, but explained that he meant that while he saw the second person, he could not identify who the person was. Davis assumed the person was Eddie L. because they called out that name. It wasn't until he came out of the house and saw the second person that Davis realized it was Shotwell, not Eddie L. Davis also denied telling the detectives that he thought something was wrong before he went to the door, and if he did not answer the door, appellants would have kicked it in. At the time of trial, Davis still had bullets and bullet fragments inside him.

At about 5:50 p.m. on January 4, 2002, Las Vegas Metropolitan Police Officer Edward Reese was on duty when he stopped a white Ford LTD driven by James, with Shotwell as a passenger. The car was listed as a "felony vehicle" from Bakersfield for murder, with a Bakersfield police department telephone number. Appellants told Officer Reese that they did not have identification cards, gave him fake names, [*12] and told conflicting stories about where they had been staying. James could not give the criminal history of the name he had given Officer Reese. Officer Reese eventually learned appellants' true identities by getting additional information from the Bakersfield police, including tattoo descriptions. Based on this information, appellants were taken to jail. While still at the scene of the stop, James admitted he had given a false name. Shotwell admitted he gave a false name after being booked into jail.

In January 2002, McBride and his partner drove to Las Vegas to interview appellants, and to look at the car that had been impounded. McBride recognized the car as the white one he had seen in J. T. Grandson's front yard that belonged to Welch.

Also in January 2002, McBride interviewed King at the Kern County jail. King told McBride that on November 27, 2001, he, his girlfriend or wife, their child, Welch, and James took Welch's car to J. T. Grandson's house for repairs. King said that as they were crossing the street to return to his house, he saw a green van drive by with someone in it that he knew, and he was irritated that they did not stop to acknowledge him and his friends.  [*13]  After the van drove by, they went inside King's house. Shortly after Welch went outside to ride a skateboard, they heard gunshots. King told McBride that James covered King's child either while shots were being fired, or shortly thereafter. King also said that he and Shotwell then went outside.

At trial, King did not recall telling Detective McBride that James was with the group of people present at his house on November 27, 2001, and he denied telling McBride that James got on top of his daughter when the shots that killed Welch were fired, a green van drove by, or that he and Shotwell chased a green van in his girlfriend's car but were unable to catch it...

**JAMES'S DEFENSE**

James testified in his own defense. He told the jury his nickname is "Michael Do." James testified he knew Roberts, but he did not know Davis. James testified that he had never been to Davis's house, he never got car parts at Davis's house from a car belonging to Roberts, he was not involved in the shooting of Davis, and he was not in Bakersfield the day Davis was shot. James denied being present when Welch was shot.

James testified he was shot in the calf while running an errand for his girlfriend's father around September 22, 2001. According to James, the wound did not require medical attention, he did not know who shot him, and [*17] he did not report it to

1  police. His girlfriend got scared, so he flew from Bakersfield to Tampa, Florida on
2  October 3, 2001. James stayed in Tampa until November 11, 2001, when he went to
   Los Angeles, where he lived with Felicia Thompson. James testified that Thompson
3  drove him to Bakersfield on November 19, 2001, so he could celebrate his birthday
   with his girlfriend. He was in Bakersfield for about 10 hours before he and Thompson
4  returned to Los Angeles, where he stayed for another two or three weeks.

5  James testified he went to Las Vegas on a Greyhound bus in early December. While
   there, he stayed in a variety of motels. According to James, he was very close to
6  Welch, his cousin, but he only found out that Welch had been shot when he called his
   aunt on Christmas Day to wish her a "Merry Christmas." James insisted he ran into
7  Shotwell in Las Vegas at the house of a mutual friend right before New Years, and the
   last time he saw Shotwell was when they were incarcerated together in March 2001 at
8  the Kern County jail. James testified Shotwell is his cousin, and that he knew
   Shotwell "pretty good." James admitted he was driving when he and Shotwell were
9  stopped by the police in Las Vegas,  [*18]  and he claimed he gave the officer a false
   name because he did not have a driver's license.

10  *James*, 2003 Cal. App. Unpub. LEXIS 10690 at 2-18.

11  **Discussion**

12  **I.    Jurisdiction and Venue**

13          A person in custody pursuant to the judgment of a state court may file a petition for a writ of

14  habeas corpus in the United States district courts if the custody is in violation of the Constitution or

15  laws or treaties of the United States.  28 U.S.C. § 2254(a);[3] 28 U.S.C. § 2241(c)(3); *Williams v.*

16  *Taylor*, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition challenging a conviction

17  is proper in the judicial district in which the petitioner was convicted.  28 U.S.C. § 2241(d).

18          As Petitioner asserts that he is in custody pursuant to a State conviction which violated his

19  rights under the United States Constitution, the Court has jurisdiction over this action.  28 U.S.C. §

20  2254(a).   Petitioner was convicted in Kern County, California, which is within the Eastern District

21  of California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).

22  ///

23  ///

24

25
26
27
28

[3] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment.  *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

## II.     Standard of Review

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment." *See, e.g.*, *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition for habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). State court factual findings are presumed correct and may not be set aside absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court must "look through" State court summary dispositions of Petitioner's claims to the last reasoned decision issued by a State court. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991).

## III.    Petitioner's Motion to Compel

On October 22, 2008, Petitioner filed a document entitled "Motion to Compel" seeking access to 1) the public defender's investigator's case files; 2) transcripts of the February 2007 preliminary hearing; and 3) certain Lerdo County Jail visiting logs. (Doc. 30). The Court may not grant Petitioner's request, as Petitioner has not obtained leave to conduct discovery as required by the Rules Governing Section 2254 Cases.

A habeas petitioner is not entitled to discovery as a matter of ordinary course. *E.g.*, *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery in habeas actions under section 2254 is governed by Rule 6 of the Rules Governing Section 2254 Cases ("Rule 6"), which provides:

> (a) Leave of court required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

1    (b) Requesting discovery. A party requesting discovery must provide reasons for the
     request. The request must also include any proposed interrogatories and requests for
2    admission, and must specify any requested documents.

3    The good cause requirement of Rule 6 is satisfied where specific allegations before the court show

4    reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that

5    he is entitled to relief. *Bracy*, 520 U.S. at 908-09.

6         For reasons discussed fully below, Petitioner has not demonstrated good cause to conduct

7    discovery, as Petitioner has not shown a likelihood of entitlement to relief. *See id*. Further,

8    Petitioner has not established that he exercised reasonable diligence in attempting to procure the

9    evidence sought before the state courts.  A federal habeas court may not receive evidence that was

10   not presented to the state courts absent a showing of reasonable diligence. *E.g., Williams v. Taylor*,

11   529 U.S. 420, 432 (2000).  Accordingly, Petitioner's motion to compel, which the Court construes as

12   a request for leave to conduct discovery, must be denied.

13   **IV.    Analysis of Petitioner's Claim**

14        **A.    Conspiracy Jury Instructions Claim**

15        Petitioner contends that the trial court erroneously instructed the jury that the agreement to

16   commit the crime and the act of fleeing the scene of the crime could be used to satisfy the overt act

17   requirement of Petitioner's conspiracy charge.  (Pet. at 5).  Under California law, commission of an

18   overt act other than the formation of the agreement itself is an element of the crime of conspiracy.

19   *E.g., People v. Kelly*, 1 Cal.4th 495, 531 (Cal. 1992).

20        The fact that a jury instruction was incorrect under state law is not a basis for federal habeas

21   relief in and of itself. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  An erroneous jury

22   instruction under state law is only grounds for federal habeas relief where "the ailing instruction by

23   itself so infected the entire trial that the resulting conviction violates due process." *Cupp v.*

24   *Naughten*, 414 U.S. 141, 147 (1973); *see also Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S.

25   145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established

26   not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it

27   violated some [constitutional right]'").  "[T]he instruction 'may not be judged in artificial isolation,'

28   but must be considered in the context of the instructions as a whole and the trial record." *Estelle*,

1   502 U.S. at 72.  In reviewing an erroneous jury instruction, federal habeas courts must inquire

2   "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a

3   way" that violates the Constitution.  *Boyde v. California*, 494 U.S. 370, 380 (1990).  Claims of

4   instructional error are subject to harmless error analysis.  *See, e.g., Washington v. Recuenco*, 548

5   U.S. 212, 220-22 (2006) ("an instruction that omits an element of the offense does not necessarily

6   render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or

7   innocence") (citing *Neder v. United States*, 527 U.S. 1, 9 (1999)).

8           The California Court of appeal issued the last reasoned state decision on Petitioner's jury

9   instruction claim and determined that the erroneous instruction was harmless given the jury's

10  implicit findings with respect to other charges against Petitioner.  The California Court of Appeal

11  held:

12          While the instructions as given were erroneous, we nevertheless conclude the error
            was harmless because the jury necessarily found, under other properly given
13          instructions, that appellants committed an overt act other than the ones erroneously
            presented. (People v. Kelly (1992) 1 Cal.4th 495, 531, 822 P.2d 385 [no reversal
14          where reviewing court able to determine that verdict rested on correct theory,
            rendering erroneous instructions of no consequence]; People v. Dieguez (2001) 89
15          Cal.App.4th 266, 277 [erroneous instruction may be cured if essential material is
            covered by other correct instructions properly given].) The jury found the special
16          allegation of personal use of a firearm true against Shotwell. Under the instruction
            given on this special allegation, the jury necessarily found that Shotwell "personally
17          discharged a firearm during the commission" of the conspiracy to commit murder
            alleged in count 1, and that the act "caused great bodily injury to Christopher Davis."
18
            Thus, the jury necessarily concluded that Shotwell shot Davis, and that Davis suffered
19          great bodily injury as a result. Since the jury reached this conclusion with respect to
            the personal use of a firearm enhancement, the jury must necessarily have also
20          concluded that overt act ten- "Defendant Manuel Shotwell shot Christopher Davis in
            the neck and torso numerous times"-was true. Put another way, no rational jury could
21          have found this overt act unproven and also find the personal use of a firearm
            enhancement alleged against Shotwell true. Since all of the jurors necessarily agreed
22          that one of the overt acts other than acts three and eleven was true, the error was
            harmless beyond a reasonable doubt. (Neder v. United States (1999) 527 U.S. 1,
23          19-20, 144 L. Ed. 2d 35, 119 S. Ct. 1827) [additional citation omitted]

24  *James*, 2003 Cal. App. Unpub. LEXIS 10690 at 28-29.

25          Based on the evidence produced at trial and the jury instructions taken as a whole, the Court

26  cannot say that the Court of Appeal's finding of harmless error was contrary to, or involved an

27  unreasonable application of, clearly established Federal law or  was based on an unreasonable

28  determination of the facts in light of the evidence presented in the State court proceeding.  As the

1   Court of Appeal correctly noted, the jury's finding that Petitioner's co-conspirator shot at the victim

2   was sufficient to satisfy the overt act requirement of Petitioner's conspiracy conviction.  The

3   instructional error of which Petitioner complains cannot be said to have had "a substantial and

4   injurious effect or influence in determining the jury's verdict,'" *Brecht v. Abrahamson*, 507 U.S.

5   619, 637 (1993), because even absent the erroneous instruction, the jury found that Petitioner's co-

6   conspirator engaged in the overt act of shooting the victim in furtherance of the conspiracy.

7   Accordingly, Petitioner is not entitled to relief on his jury instruction claim.  *See Fry v. Pliler,* 551

8   U.S. 112, 120-22 (stating that *Brecht* established standard for determining  harmless error analysis in

9   the context of collateral challenges to state convictions under section 2254).

10      **B. Petitioner's *Marsden* Claim**

11      Petitioner contends that the trial court erroneously denied Petitioners's motion for

12   substitution of counsel pursuant to *People v. Marsden*, 2 Cal.3d 118, 124-25 (Cal. 1970) after

13   holding a hearing on the matter on May 3, 2003.  (Pet. at 9).  The Superior Court issued the last

14   reasoned decision on this claim in its order denying Petitioner's state habeas petition.  (Doc. 13, First

15   Amended Pet. at 40).[4]  The Superior Court held, correctly, that Petitioner's claim with respect to the

16   May 2, 2003 *Marsden* hearing was moot , as the California Court of Appeal granted Petitioner relief

17   on this claim by ordering the trial court to conduct a full *Marsden* hearing on remand.  *James,* 2003

18   Cal. App. Unpub. LEXIS 10690 at 43.  The trial court conducted a full *Marsden* hearing on March

19   18, 2004 and determined that Petitioner was not entitled to substitute counsel.  *James*, 2005 Cal.

20   App. Unpubl LEXIS. 1129 at 3-5.

21      Accordingly, the Superior Court's denial of Petitioner's *Marsden* claim concerning the May

22   2, 2003 hearing was not objectively unreasonable, and Petitioner is not entitled to relief on this claim

23   under section 2254.  *Lockyer*, 538 U.S. at 75.

24   ///

25   _____

26   [4] Respondent contends that the Superior Court's order subjects some of Petitioner's to a procedural bar.  Procedural default
    can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state

27   procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989).  The Court finds that the Superior Court's order does not
    expressly impose a procedural bar on Petitioner's claims, despite the Superior Court's reference to Petitioner's failure to raise

28   certain issues on appeal, because the order indicates that Petitioner's allegations fail to state a prima facie case for relief and
    thus appears to pass on the merits of Petitioner's allegations.

1

**C.  Double Jeopardy Claim**

2

Petitioner contends that his conviction for attempted murder must be dismissed because

3 attempted murder was a lesser included offense of the conspiracy charge for which Petitioner was

4 convicted.  Petitioner's claim lacks merit.

5

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution

6 prohibits State's from prosecuting a person for a crime that is a "lesser included offense" of another

7 crime for which the person has been prosecuted.  *E.g., United States v. Felix*, 503 U.S. 378, 388-89

8 (1992).   A lesser included offense is defined as one that is "necessarily included" within the

9 statutory elements of another offense.  *United States v. Dixon*, 509 U.S. 688, 718 (1993).   "The

10 commission of the substantive offense and a conspiracy to commit it are separate and distinct

11 offenses . . . double jeopardy is no defense to a conviction for both offenses."  *Pinkerton v. United*

12 *States*, 328 U.S. 640, 643 (1946).

13

The California Court of Appeal issued the last reasoned decision regarding Petitioner's

14 double jeopardy claim in its order affirming Petitioner's conviction.  *James*, 2003 Cal. App. Unpub.

15 LEXIS 10690 at 30-31.   The California Court of Appeal rejected Petitioner's double jeopardy claim,

16 citing *Felix* for the proposition that "conspiracy is a distinct offense from the actual commission of

17 the offense forming the object of the conspiracy."  *Id*.  The California Court of Appeal's

18 determination was not objectively unreasonable.   Attempted murder is not "necessarily included" in

19 the crime of conspiracy to commit murder because the conspiracy offense may occur even absent an

20 attempt to murder the victim.  Accordingly, Petitioner is not entitled to relief on his double jeopardy

21 claim.  *Lockyer*, 538 U.S. at75.

22

**D.  Petitioner's Sentencing Error Claims**

23

**1. "Prison Prior" Enhancement**

24

Petitioner contends that the sentencing court erred in imposing two separate enhancements to

25 Petitioner's sentence based on Petitioner's prior conviction for an unrelated offense.

26 Petitioner's claim is moot, as the California Court of Appeal granted Petitioner relief with respect to

27 this claim. *James*, 2003 Cal. App. Unpub. LEXIS 10690 at 41-42.

28 ///

1                 **2. Fifteen Years to Life Sentence**

2       Petitioner contends that the sentencing court erred in imposing a fifteen year to life sentence

3 for Petitioner's crime.  Petitioner's claim is moot, as the California Court of Appeal granted

4 Petitioner relief with respect to this claim.[5]  *James*, 2003 Cal. App. Unpub. LEXIS 10690 at 41-42.

5          **E.  Petitioner's Claim Regarding the Trial Court's Failure to Question Trial Counsel**

6       Petitioner contends that the trial court "had a *sua sponte* duty to adequately inquire" as to the

7 basis of Petitioner's *Marsden* motion during the March 11, 2004 hearing on remand. (Pet. at 18).

8 Specifically, Petitioner complains that the trial court "had a duty...to question counsel...as to why he

9 did not tell his client that he was identified by the victim on the 9-1-1- tape." (Id.).  Petitioner

10 contends that the trial court's failure to ask specific questions of Petitioner's counsel during the

11 *Marsden* hearing violated Petitioner's due process rights because the proceeding was rendered

12 fundamentally unfair by the trial court's omissions. (Pet. at 19).  Petitioner cites no clearly

13 established federal law in support of this proposition.

14       The California Superior Court issued the last reasoned decision regarding Petitioner's claim

15 in its order denying Petitioner's state habeas petition.  The Superior Court stated that Petitioner's

16 claim failed to state a prima facie case for relief.  (Doc. 13, First Amended Pet. at 40).  The Court

17 cannot say that the Superior Court's rejection of Petitioner's claim was objectively unreasonable, as

18 no clearly established federal law establishes that the trial court had a *sua sponte* duty to inquire as to

19 the specifics of Petitioner's complaints during the March 8, 2004 *Marsden* hearing.

20       The Supreme Court has defined the category of infractions that violate the fundamental

21 fairness doctrine of due process "very narrowly."  *E.g. Dowling v. United States*, 493 U.S. 342, 352

22 (1990) (citations omitted).  The standard for determining whether a persons conviction violates the

23 fundamental fairness guarantee of the Due Process clause is "whether the action complained of . . .

24 violates those 'fundamental conceptions of justice which lie at the base of our civil and political

25

26

27    [5] Petitioner's second amended complaint is a compilation of pages from Petitioner's briefs on direct appeal, his state habeas petitions, and his federal habeas petitions.  It is unclear exactly which claims Petitioner seeks to assert before this Court and which claims merely happened to have been briefed, during a previous proceeding, on the same page as a claim that is clearly asserted in this action.  Some claims appear multiple times throughout different portions of the petition under different alphanumeric designations.

28

1   institutions'...and which define 'the community's sense of fair play and decency.'" *Id*. (citations

2   omitted).  Petitioner's allegations do not implicate fundamental conceptions of justice or the

3   community's sense of fair play and decency.  Petitioner was given a full opportunity to present the

4   basis of his motion to the trial court.

5       Because the State court's determination, that the trial court's conduct at the March 18, 2004

6   *Marsden* hearing did not render the proceedings fundamentally unfair, was reasonable, Petitioner is

7   not entitled to relief on this claim.  *Lockyer*, 538 U.S. at75.

8          **F.  Petitioner's Prosecutorial Misconduct Claim**

9        Petitioner contends that his trial was rendered fundamentally unfair by the prosecution's

10   introduction of hearsay evidence regarding the testimony of witness King.  (Pet. at 31).  Before trial,

11   King allegedly made inconsistent statements to various police officers regarding whether or not he

12   had seen Petitioner close to the scene of the crime.  At trial, King denied seeing Petitioner near the

13   scene of the crime.  The prosecution then questioned law enforcement officers regarding King's prior

14   inconsistent statements.  The Superior Court issued the last reasoned decision regarding Petitioner's

15   claim of prosecutorial misconduct in its decision denying Petitioner's state habeas petition.  (Doc 13,

16   First Amended Pet. at 40).  The Superior Court held that Petitioner failed to state a prima facie claim

17   for relief.  (Id.)

18        "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and

19   must be set aside if there is any reasonable likelihood that the false testimony could have affected the

20   judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976).  However, the Constitution

21   does not prohibit prosecutors from presenting evidence of their own witnesses' prior inconsistent

22   statements.  *See N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1118 n.4 (9th Cir. 2001) (discussing

23   "turncoat witness" scenario); *see also United State v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir.

24   1990) (discussing Fed. R. Evid. 607, which permits the government to impeach its own witness).[6]

25   The evidence of which Petitioner complains is the testimony of Officer McBride concerning King's

26

27   ────────────

28   [6] In *Gomez-Gallardo*, the Ninth Circuit noted that "the government must not knowingly elicit testimony from a witness in
order to impeach him with otherwise inadmissible testimony." 917 F.2d at 555.  Petitioner does not allege that the prosecution
called King with knowledge that he would recant his prior identification of Petitioner or for any other improper purpose.

1   alleged prior statement that King had seen Petitioner close to the scene of the crime.  (Pet. at 32).

2   Although Officer McBride's testimony contradicted the testimony of King at trial, Petitioner has not

3   met his burden of establishing that the prosecution knew or should have known that it was Officer

4   McBride, not King, that was being untruthful at trial.  On this record, the Court lacks sufficient

5   evidence to conclude that Officer McBride's testimony was false; *a fortiori*, the Court cannot

6   conclude that the prosecution believed McBride's testimony was untrue.  Accordingly, the Court

7   cannot say that the State court's denial of Petitioner's claim of prosecutorial misconduct was

8   objectively unreasonable, and Petitioner is not entitled to relief under section 2254.  *Lockyer*, 538

9   U.S. at 75.

10   **H. Petitioner's Claims Regarding the Proceedings Before the Trial Court on Remand**

11   Petitioner contends that the trial court violated his Sixth Amendment right to counsel and

12   Due Process right to a fair hearing by denying Petitioner's request for counsel to assist him at his

13   *Marsden* hearing on remand.  (Pet. at 38).[7]   The California Court of Appeal issued the last reasoned

14   decision regarding Petitioner's claim that the trial court erred in denying Petitioner's *Marsden*

15   motion on remand.  The Court of Appeal reasoned:

16   Here, the trial court denied the request for new counsel because James did not make
     the required showing, i.e. he did not make a prima facie showing of ineffective

17   assistance of counsel or that an irreconcilable conflict existed between himself and his
     trial counsel. (Smith, supra, 6 Cal.4th at p. 696.) James does not contend the court

18   abused its discretion in so finding. The court was not required to appoint independent
     counsel to assist James and did not abuse its discretion in failing to do so.

19
     James's claim that failure to appoint independent counsel to assist him in making his
20   Marsden motion denied him the right to counsel guaranteed by the Sixth and
     Fourteenth Amendments to the United States Constitution and article I, section 15 of
21   the California Constitution is also without merit. Our Supreme Court has held there is
     no constitutional right to the assistance of a separate attorney to argue that appointed
22   trial counsel is ineffective and should be replaced. (People v. Hines, supra, 15 Cal.4th
     at p. 1025.)

23
24   The Court cannot say that the California Court of Appeal's rejection of Petitioner's claim was

25   objectively unreasonable.  Petitioner cites no clearly established federal law for the proposition that

26

27   [7] The second amended petition designates this claim as claim 8 and claim 9.  Although the titles of claims 8 and 9 are worded
     slightly differently, both claims assert that the trial court improperly denied Petitioner's request for counsel to assist him at
28   the *Marsden* hearing on remand in violation of Petitioner's due process rights and right to counsel. Thus, the Court need not
     address the claims separately.

1   the Constitution guarantees persons a right to counsel in a hearing such as the *Marsden* hearing.

2   Further, as noted above in section III(b), Petitioner failed to establish that his trial counsel was

3   ineffective before the State courts.  Thus, Petitioner was not denied counsel at the March 2004

4   *Marsden* hearing, as he was represented by counsel at the hearing.

5        Finally, the Court notes that Petitioner's allegations do not implicate fundamental

6   conceptions of justice or the community's sense of fair play and decency.  Therefore, Petitioner's

7   claim is not cognizable under the Due Process Clause.  *See, e.g., Dowling*, 493 U.S. at 352.

8   Accordingly, the State court's denial of Petitioner's claims with respect to the March 2004 *Marsden*

9   hearing was not objectively unreasonable, and Petitioner is not entitled to relief on this claim.

10  *Lockyer*, 538 U.S. at 75.

11       **I.  Petitioner's Ineffective Assistance of Counsel Claims**

12            **1. Trial Counsel**

13       Petitioner contends he was denied effective assistance of counsel at all stages of his criminal

14  proceeding.  With respect to trial counsel, Petitioner complains of a lack of communication, failure

15  to investigate, disagreements regarding trial strategy, failure to object to testimony concerning

16  Petitioner's gang affiliation, failure to object to King's testimony, and failure to adequately advise

17  Petitioner about various proposed plea agreements.  (Pet. at 39-44).

18       For Petitioner to prevail on his ineffective assistance of counsel claims, he must show: (1)

19  that counsel's performance was deficient, and (2) that he was prejudiced by the deficient

20  performance.  *E.g., Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court evaluating an

21  ineffective assistance of counsel claim does not need to address both components of the test if the

22  petitioner cannot sufficiently prove one of them.  *Id.* at 697; *Thomas v. Borg*, 159 F.3d 1147,

23  1151-52 (9th Cir. 1998).  Establishing counsel's deficient performance does not warrant setting aside

24  the judgment if the error had no effect on the judgment.  *Seidel v. Merkle*, 146 F.3d 750, 757 (9th

25  Cir. 1998).  A petitioner must show prejudice such that there is a reasonable probability that, but for

26  counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*,

27  466 U.S. at 694.

28  ///

The California Superior Court issued the last reasoned decision concerning Petitioner's

ineffective assistance of counsel claims.  The Superior Court held that Petitioner's allegations and

evidence failed to establish that Petitioner was prejudiced by his counsel's performance. The

Superior Court stated:

> Petitioner has failed to show any prejudice as a result of Counsel's alleged actions by facts and/or documentary evidence.
>
> **Four year plea offer/failure to Investigate at preliminary hearing**
> Petitioner failed to present, nor can he present, any facts and/or documentary evidence that had counsel investigated the charges and circumstances that Petitioner claims counsel should have, that Petitioner would have taken the four year plea before the preliminary hearing.  Petitioner is obligated to state with particularly the facts on which relief is sought and to attache reasonably available documentary evidence that supporting [sic] his claim. (citations). Petitioner asserts that counsel presented a "confusing" array of discovery, but does not state that there was any facts/information [sic] that counsel could have discovered before the preliminary hearing that would have supported Petitioner taking the plea.  Petitioner also seems to imply that if he would have taken the 4 year plea that no other charges would have been brought against him.  Additionally, Petitioner admits that his Marsden request after the preliminary hearing was denied, indicating that the Court did not find counsel's assistance ineffective.  Finally, while Petitioner states he would have taken the plea offer if he had known this information, he fails to present facts and/or documentary evidence that established as a demonstrable reality that he would have taken the plea (i.e., he believed the other evidence was strong against him, he did not have a sufficient defense or rebuttal evidence, etc.).  Therefore, Petitioner has failed to establish prejudice and his claim that he recieved ineffective assistance of counsel on this ground is an usupported conclusory allegation that is insufficient to support the relief granted [sic]. (citations).
>
> **20 year plea offer/failure to inform Petitioner of trial strategy removing a possible defense to plea offer**
> Petitioner failed to present, nor can he present, any facts and/or documentary evidence that had counsel informed Petitioner of his trial strategy that Petitioner claims counsel should have, that Petitioner would have taken the plea.  Petitioner is obligated to state with particularly the facts on which relief is sought and to attache reasonably available documentary evidence that supporting [sic] his claim.  All petitioner states is that counsel stated he had an alibi witness piror to the 20 year plea offer and then at trial stated that the witness was not as strong as counsel thought he would be so [sic] would not be calling him at trial.  The later [sic] information fails to establish that the information known at the tmie of the plea offer was erroneous or incorrect.  Additionally, while Petitioner states he would have taken the plea offer if he had known this information, he fails to present  facts and/or documentary evidence that established as a demonstrable reality that he would have taken the plea (i.e., he believed the other evidence was strong against him, he did not have a sufficient defense or rebuttal evidence, etc).  Therefore, Petitioner has failed to establish prejudice...

(Pet. at 39-40).

///

1       After reviewing the record, the Court cannot say that the California Superior Court's denial

2  of Petitioner's ineffective assistance of counsel claim was objectively unreasonable.  During the

3  March 18 hearing, Petitioner swore, under oath, that "counsel was informed by me...that I was not

4  going to take a plea bargain."  (Id. at 103).  Given Petitioner's statement to counsel that he would not

5  accept a plea bargain and the fact that Petitioner rejected a four-year deal in the face of very serious

6  charges, it is highly unlikely that Petitioner's trial counsel could have uncovered information through

7  pre-trial investigation that would have persuaded Petitioner to accept a plea agreement.  Further,

8  Petitioner maintained his innocence throughout the State court proceedings, including during the

9  March 18, 2004 *Marsden* hearing.  (Lod. Doc. 12 at102).  At the *Marsden* hearing, Petitioner

10  represented to the Superior Court that he was not at the scene of the crime at all during its

11  commission.  (Id.).  Petitioner's continued assertion of innocence renders Petitioner's conclusory

12  allegation that he would have accepted a plea bargain if counsel had conducted a more thorough

13  investigation incredible.  Further, the record demonstrates that the facts Petitioner contends would

14  have persuaded him to take a plea bargain–the existence of a recording of the victim's 9-1-1 call

15  implicating Petitioner and the weakness of his alibi witness– were likely known to Petitioner at all

16  times relevant.  (Id. at 108).  At the March 18 *Marsden* hearing, Petitioner's trial counsel testified

17  that it was his practice to provide Petitioner with materials given to him by the prosecution.  (Id.).

18  With respect to his abili witness, Petitioner was certainly in the best position to know whether or not

19  his witness could truthfully testify that she was with Petitioner at the time of the crime.

20       Given the record, the Court cannot say that the Superior Court's determination, that

21  Petitioner had not demonstrated prejudice under *Strickland*, was objectively unreasonable.

22  Accordingly, Petitioner is not entitled to relief on his ineffective assistance of trial counsel claim.

23  *Lockyer*, 538 U.S. at75.

24                 **2. Appellate Counsel**

25       Petitioner contends that his appellate counsel was constitutionally ineffective for failing to

26  raise an ineffective assistance of counsel claim during Petitioner's direct challenge to his conviction.

27  For reasons discussed above, Petitioner's claim must fail.

28  ///

U.S. District Court
E. D. California

1    The California Supreme Court issued the only decision addressing Petitioner's ineffective

2  assistance of appellate counsel claim.  The Supreme Court summarily denied the claim.  Where the

3  state courts fail to provide a reasoned decision on a claim, a federal habeas court must conduct and

4  independent review of the record to determine whether the state court's summary denial was

5  objectively unreasonable.  *E.g., Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009).

6    In order to establish ineffective assistance of appellate counsel, Petitioner must demonstrate

7  that he was prejudiced by his counsel's decision to forego an ineffective assistance of trial counsel

8  claim during Petitioner's direct challenge to his conviction.  In other words, Petitioner must

9  demonstrate that had appellate counsel raised an ineffective assistance of trial counsel claim, there is

10  a reasonable probability that the outcome of his appeal would have been different.  As discussed

11  above, Petitioner has not demonstrated he was prejudiced by his trial counsel's performance.

12  Accordingly, because Petitioner has not established ineffective assistance of trial counsel, *a fortiori*,

13  Petitioner cannot establish that his appellate counsel would have likely prevailed had appellate

14  counsel asserted ineffective assistance of trial counsel on appeal.  Accordingly, the California

15  Supreme Court's rejection of Petitioner's ineffective assistance of appellate counsel claim was not

16  objectively unreasonable, and Petitioner is not entitled to relief under section 2254.  *Lockyer*, 538

17  U.S. at 75.

18    **J. Brady Claim**

19    Petitioner contends that the prosecution violated his constitutional rights as set forth in *Brady*

20  *v. Maryland*, 373 U.S. 83, 87 (1963).   In *Brady*, the Supreme Court held that the prosecution must

21  turn over exculpatory evidence to criminal defendants.  *See id*.

22    The California Supreme Court summarily denied Petitioner's *Brady* claim in the only

23  decision issued by the state thereon.  The Court cannot say that the California Supreme Court's

24  denial of Petitioner's *Brady* claim was objectively unreasonable.  Petitioner does not allege that the

25  prosecution withheld exculpatory evidence from the defense.  Rather, Petitioner complains that the

26  prosecution withheld *inculpatory* evidence from Petitioner prior to trial.  (Pet. at 60).  Petitioner's

27  allegations do not state a violation of *Brady*.  *See, e.g., Gray v. Netherland*, 518 U.S. 152, 168 (1996)

28  ("there is no general constitutional right to discovery in a criminal case, and *Brady*, which addressed

only exculpatory evidence, did not create one").  Accordingly, the California Supreme Court's denial

of Petitioner's *Brady* claim was not objectively unreasonable, and Petitioner is not entitled to relief

under section 2254.  *Lockyer*, 538 U.S. at75.

**V.      Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

district court's denial of his petition, and an appeal is only allowed in certain circumstances.  *Miller-*

*El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue

a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability

"if jurists of reason could disagree with the district court's resolution of his constitutional claims or

that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  While the

petitioner is not required to prove the merits of his case, he must demonstrate "something more than

the absence of frivolity or the existence of mere good faith on his . . . part."  *Miller-El*, 123 S.Ct. at

1040.

1    In the present case, the Court finds that reasonable jurists would not find the Court's

2  determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

3  deserving of encouragement to proceed further.  Petitioner has not made the required substantial

4  showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a

5  certificate of appealability.

6                                              **ORDER**

7    Accordingly, IT IS HEREBY ORDERED that:

8    1. Petitioner's motion to compel is DENIED;

9    2. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

10    3. The Clerk of Court is DIRECTED to enter judgment; and

11    4. The Court DECLINES to issue a certificate of appealability.

12

13  IT IS SO ORDERED.

14  **Dated:    September 4, 2009            /s/ John M. Dixon        **
                                    UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28